**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**RUSSEL R.M.,**

                              **Plaintiff,**                              **22-CV-589 Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all

proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #14.

## BACKGROUND

Plaintiff applied for disability and supplemental security income ("SSI"),

benefits with the Social Security Administration ("SSA"), on April 18, 2019, alleging

disability beginning May 17, 2016, at the age of 32 due to bipolar disorder, depression

and anxiety. Dkt. #4, p.90.

On June 3, 2021, plaintiff appeared by teleconference with counsel, along

with vocational expert ("VE"), Timothy Andenmatten, and testified before Administrative

Law Judge ("ALJ"), Stephen Cordovani. Dkt. #4, pp.40-89. Plaintiff testified that he experienced addiction following a back injury sustained in a car accident in 2008. Dkt. #4, p.58. Plaintiff's bipolar symptoms emerged when he transitioned from prescription painkillers to street drugs. Dkt. #4, pp.58-59. He had been clean and sober since November 8, 2016 and utilized Suboxone to maintain his sobriety. Dkt. #4, p.55. He was also currently prescribed three mood stabilizers, an antidepressant, and anti-anxiety medication. Dkt. #4, pp.59-60. He was receiving residential and care management services through Transitional Services, Inc. Dkt. #4, p.60. Plaintiff lives alone in a second floor apartment which doesn't have an elevator or laundry facilities. Dkt. #4, p.48.

Plaintiff testified that his bipolar disease was unpredictable, causing mood swings, irritability, anxiety, difficulty concentrating, problems focusing, and trouble sleeping. Dkt. #4, p.60. His mood swings create problems socially, especially in the workplace. Dkt. #4, p.60. When he is in a depressive cycle, he loses interest in just about everything and finds it difficult to get out of bed. Dkt. #4, p.60. He experiences hypomania at least twice a month, with symptoms lasting 6-8 days. Dkt. #4, p.61.

Plaintiff had a history of seizures, the most recent about six weeks ago, when he was mowing the lawn at his girlfriend's home. Dkt. #4, pp.69 & 79. He had no recollection of the seizure, but it was caught on a security camera. Dkt. #4, p.69. He was scheduled for an EEG. Dkt. #4, p.69. Plaintiff also had a history of deep vein thrombosis (DVT), for which he was prescribed blood thinners. Dkt. #4, p.70.

On an average day, plaintiff testified that he was capable of standing or walking no more than an hour and sitting no more than a couple of hours at a time before he needed to move around. Dkt. #4, p.71. He tries to work out at the gym 4-5 times per week to get out some of his energy, but was limited in what he could do because of his back. Dkt. #4, pp.72 & 75. The Suboxone also helps with pain. Dkt. #4, p.76. He was told he might need multiple surgeries on his back, but didn't want to go down that road at his young age. Dkt. #4, p.77.

Plaintiff testified that he went back to school to prove to himself that he could be a productive member of society, but was unsure if he was ready. Dkt. #4, p.66. He started taking classes at Erie Community College in the Fall of 2017 and enrolled in their respiratory therapy program beginning in the Fall of 2019. Dkt. #4, pp.49-50 & 56. As part of the program, he worked two days a week, 8-hours a day at multiple hospitals, but opted to leave early whenever possible. Dkt. #4, pp.53 & 65. He was scheduled to take a clinical simulation to complete his requirements in June. Dkt. #4, p.51.

When asked whether an individual with plaintiff's age, education and work experience "capable of meeting [sic] exertion work" would be capable of performing any of plaintiff's past relevant work, the VE testified that such an individual would be able to work as a sales person, which is a semiskilled light exertion position previously performed by plaintiff at the medium exertion level or as a security guard, which is a semiskilled, light exertion position. Dkt. #4, pp.84-86. The VE testified that employer

-3-

tolerance for unscheduled absences is one day per month and employer tolerance for time off task is 10%. Dkt. #4, pp.85-86.

The ALJ rendered a decision that plaintiff was not disabled on June 30, 2021. Dkt. #4, pp.17-33. The Appeals Council denied review on June 3, 2022. Dkt. #4, p.6. Plaintiff commenced this action seeking review of the Commissioner's final decision on July 28, 2022. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff met the insured status requirements through March 31, 2017; (2) plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 17, 2016; (3) plaintiff's opioid, cocaine and heroin abuse

constitute a severe impairment; (3) plaintiff's impairment did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform work at all exertion levels but would be absent from work more than one day per month due to treatment from the alleged onset date through the date last insured and as a result was unable to perform his past relevant work or any other work during this period; (5) absent substance abuse and at all times since the April 18, 2019 SSI application date, plaintiff no longer suffered from a severe impairment and was not, therefore, disabled within the meaning of the SSA. Dkt. #4, pp.23-32.

Materiality of Substance Abuse

Plaintiff argues that the ALJ's determination that plaintiff would not be disabled absent substance abuse was not supported by substantial evidence because it was unclear how the ALJ separated plaintiff's substance abuse issues from his mental health conditions. Dkt. #9-1, pp.13-20. More specifically, plaintiff argues that he experienced significant mental health symptoms during periods of abstinence and that these symptoms often triggered relapse. Dkt. #9-1, pp.16-17. Plaintiff also argues that the ALJ failed to develop the record as to plaintiff's impairments during the time period between May 2016 and March 2017 and should have obtained a retrospective opinion given the complexity of plaintiff's co-occurring substance abuse disorder and mental health diagnoses and the absence of medical source opinions prior to April of 2018. Dkt. #9-1, pp.20-23. Because plaintiff did not start nursing classes until Fall of 2017, which is after the date last insured, plaintiff argues that it was error to consider his ability to attend school. Dkt. #9-1, p.18. Finally, plaintiff argues that his ability to engage

in basic activities and attend medical appointments did not diminish his significant mental health limitations. Dkt. #9-1, pp.18-19.

The Commissioner responds that substantial evidence supports the ALJ's determination that plaintiff's substance abuse was material through the date last insured. Dkt. #11-1, p.16. The Commissioner argues that plaintiff admitted that substance abuse had affected his job performance and denied significant mental health symptoms once he achieved sobriety. Dkt. #11-1, p.17.

In 1996, Congress enacted the Contract with America Advancement Act ("CAAA"), which amended the SSA so that an individual will not be considered disabled if alcoholism or drug addiction would be a material contributing factor to the Commissioner's determination that the individual is disabled. *Cage v. Comm'r of Soc. Sec*, 692 F.3d 118, 123 (2d Cir. 2012), *citing* 42 U.S.C. § 1382c (a)(3)(J), *cert. denied*, 570 U.S. 919 (2013). In analyzing cases where substance abuse is present, the regulations make clear that the ALJ must first make a determination as to disability by following the five-step sequential evaluation process without segregating any effects that might be due to substance abuse disorders. *Colbert v. Comm'r of Soc. Sec.*, 18-CV-702, 2019 WL 6648562, at *3 (W.D.N.Y. Dec. 6, 2019). In other words, the ALJ's initial disability determination should concern strictly symptoms, not causes. *Id.* It is only after a plaintiff is determined to be disabled and the medical records reveal substance abuse problems that the ALJ considers whether drug addiction and alcoholism ("DAA"), is a material contributing factor to the finding of disability. *Cage*, 692 F.3d at 123. At that

point, the critical question is whether the SSA would still find the plaintiff disabled if he ceased using drugs or alcohol. *Id.* Where an ALJ conflates the effect of substance abuse with the initial disability determination itself, remand is required. *Piccini v. Comm'r of Soc. Sec.*, No. 13-CV-3461, 2014 WL 4651911 at *12 (S.D.N.Y. Sept. 17, 2014).

It is the plaintiff's burden to establish that his DAA is not material to the disability determination. *Cage,* 692 F.3d at 130. "Periods of abstinence can be evidence used to determine if an impairment would improve to the point of nondisability." *Sherry L. v. Comm'r of Soc. Sec.*, 2022 WL 2180159, at *7 (W.D.N.Y. June 16, 2022). Medical records demonstrating that mental health symptoms were manageable with medication and that functioning improved with substance abuse treatment can also support a finding that substance abuse is a contributing material factor. *Smith v. Comm'r of Soc. Sec.*, 731 Fed. App'x 28, 30 (2d Cir. 2018). When it is not possible to separate mental restrictions and limitations imposed by the DAA from those imposed by the mental disorder, a finding of not material would be inappropriate. *Frankhauser v. Barnhart*, 403 F. Supp.2d 261, 274 (W.D.N.Y. 2005); *See Williams v. Colvin*, 13-CV-1186, 2016 WL 1553443, at *1 (W.D.N.Y. April 18, 2016) ("where limitations associated with substance abuse cannot be parsed out from mental health limitations, substance abuse cannot be held material to a finding of disability.").

The ALJ's determination that plaintiff's substance abuse was a material factor in his inability to maintain employment for the period between his alleged onset of

disability on May 17, 2016 and his date last insured on March 31, 2017 is supported by substantial evidence. As the ALJ noted in his decision, plaintiff "required extensive inpatient chemical dependency treatment" during this time period (Dkt. #4, p.25), but declined mental health treatment because his inability to maintain employment was due to substance abuse rather than mental illness. Dkt. #4, p.29.

Medical records from substance abuse disorder treatment providers document normal mental status examinations and minimal mental health symptoms. Upon initial evaluation at Horizon Villages for substance abuse disorder treatment on June 6, 2016, for example, plaintiff presented with appropriate hygiene and demonstrate good eye contact. Dkt. #4, p.947.

> His speech was clear. His affect was anxious which was congruent with his reported mood. He was cooperative and pleasant throughout the session. His thought process was logical and thought content appropriate. He appeared to be of average intelligence. [Plaintiff] reported no perceptual disturbances and none were noted. He was oriented to person, time and place and his memory and attention were intact. [Plaintiff] demonstrated good insight into his [mental health] symptoms and good judgment in seeking out services. [Plaintiff's] reported symptoms and writer's observations support diagnoses of [Generalized Anxiety Disorder] and [Bipolar I].

Dkt. #4, p.947. Although plaintiff expressed a desire to address his fluctuating moods and work on his recovery and reported difficulty obtaining care for his back pain, which he reported as "very distracting and anxiety-inducing," and subsequently appeared anxious due to a reported conflict with another resident and due to his relationship status, by August 12, 2016, plaintiff reported substantial progress in treatment and was observed to be euthymic. Dkt. #4, pp.956, 959, 964, 968, 970 & 991.

Upon his discharge from Horizon Villages on September 13, 2016, plaintiff reported a consistent reduction in anxiety symptoms and increased self-esteem/ confidence and motivation for the future. Dkt. #4, p.984. He declined referral for continued mental health counseling. Dkt. #4, p.985. Upon admission to Cazenovia Manor's community residential service, plaintiff reported feeling content and happy, with minimal anxiety symptoms. Dkt. #5, pp.133 & 139. During his intake evaluation for outpatient services at Evergreen Health Services on November 1, 2016, plaintiff was assessed with opioid dependence, in remission, and bipolar disorder, in full remission. Dkt. #4, p.698. Plaintiff opted to continue opioid dependence recovery through substance use treatment, but declined mental health counseling because "he did not feel mental health treatment was needed at this time," and had an effective medication regimen for his mental health. Dkt. #4, p.689. Evergreen Health Services concurred that individual mental health counseling was not recommended because plaintiff's bipolar disorder symptoms were in remission. Dkt. #4, p.691.

Plaintiff was discharged from Cazenovia Manor for noncompliance in November of 2016 and admitted to inpatient detoxification before returning to Cazenovia Manor in December of 2016. Dkt. #4, p.189. In February and March of 2017, Evergreen Health Services noted that plaintiff denied "anxiety, difficulty concentrating, depression, illicit drug use, hopelessness, insomnia, irritability, lack of eating control, loss of interest, mood changes, sadness, sleep pattern disturbance, suicide attempts and suicidal thoughts." Dkt. #4, pp.189, 745 & 750. Plaintiff's affect was normal with no apparent anxiety, depression or agitation. Dkt. #4, pp.747 & 751.

Upon discharge from Cazenovia Manor on May 4, 2017, plaintiff was noted to have identified links between his substance abuse and his mental health and to have "worked actively to stabilize his mental health in order to improve his odds of abstaining from using." Dkt. #5, pp.259-260. More specifically, plaintiff had worked with his mental health provider to stabilize his mental health through medication changes and development of more effective coping skills to manage symptoms and relieve stress. Dkt. #5, p.260. Plaintiff was noted to have attended counseling sessions with Evergreen, to have been compliant with his prescribed medication, and to have decreased his level of anxiety/depression by using coping mechanisms such as working out and bike riding to release stress. Dkt. #5, p.320.

Given this evidence of record regarding plaintiff's mental status during the relevant time period, there was no gap that would obligate the ALJ to obtain a retroactive opinion as to the functional effects of any mental impairments. *See Perez v. Chater,* 77 F.3d 41, 48 (2d Cir. 1996) (ALJ not required to obtain retrospective assessment where ALJ possessed adequate evidence to make a disability determination); *Aguglia v. Comm'r of Soc. Sec.*, 19-CV-6110, 2020 WL 4462519, at *5 (W.D.N.Y. Aug. 4, 2020) (ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim where the ALJ already possesses a complete medical history). Moreover, the ALJ was entitled to rely upon the assessment of state agency consultant H. Tzetzo, M.D. (Dkt. #4, p.131), that there was insufficient evidence to substantiate the presence of a depressive, bipolar or related disorder prior to plaintiff's date last insured. *See Michelle K. v. Comm'r of Soc. Sec.*, 2024 WL 1856857,

at *10 (W.D.N.Y. April 29, 2024) ("It is well established than an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion[s] may constitute substantial evidence."). Finally, it was not improper for the ALJ to rely upon evidence subsequent to the date last insured – when plaintiff was no longer abusing substances – to inform his determination that plaintiff would not be significantly limited in his ability to perform basic work activities if he ceased substance abuse. *See Bobbie W. v. Dudek*, 2025 WL 755639, at *6 (N.D.N.Y. March 10, 2025) (recognizing that medical evidence subsequent to plaintiff's last insured date is not irrelevant to the question of whether plaintiff was disabled); *Falco v. Comm'r of Soc. Sec.*, 2025 WL 510061, at *3 n.2 (E.D.N.Y. Feb. 14, 2025) (Evidence after the date last insured may be considered because evidence bearing upon an applicant's condition subsequent to the date last insured may disclose the severity and continuity of impairments existing before the date last insured), *citing Lisa v. Sec'y of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 44 (2d Cir. 1991).

### Non-Severe Impairments

Plaintiff argues that the ALJ's determination that plaintiff had no severe impairments during the time period relevant to his SSI claim is contradicted by medical source opinions diagnosing plaintiff with low back pain and bipolar disorder and cannot be considered harmless. Dkt. #9-1, pp.28-30.

The Commissioner responds that there is no interpretation of the evidence of record that would suggest that plaintiff is incapable of substantial gainful

employment. Dkt. #11-1, p.27. More specifically, the Commissioner argues that plaintiff's subjective complaints of pain, without objective findings, are insufficient to establish a medically determinable impairment and that the ALJ's assessment of no more than mild limitations in mental functioning are supported by substantial evidence, thereby supporting the ALJ's determination that plaintiff's bipolar disorder is non-severe. Dkt. #11-1, pp.29-31.

Plaintiff has the burden of establishing that he has a severe impairment, which is defined as any medically determinable impairment or combination of impairments which significantly limits plaintiff's physical or mental ability to do basic work. *Noelle M. v. Bisiganano*, 24-CV-1196, 2025 WL 2731033, at *4 (D. Ct. Sept. 25, 2025). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.921. This can be "established by objective medical evidence from an acceptable medical source" but cannot be based upon a plaintiff's own statement of his symptoms. *B.D. v. Kijakazi*, 21-CV-49, 2023 WL 2398458, at *2 (D. Vt. March 2, 2023); *Isacc R. v. Kijakski*, 20-CV-1172, 2022 WL 306364, at *4 (N.D.N.Y. Feb. 2, 2022). This determination is consequential because only medically determinable impairments are considered in formulating an RFC. *Elizabeth H. v. Comm'r of Soc. Sec.,* 2025 WL 1746568, at *5 (W.D.N.Y. June 23, 2025). Thus, remand is generally required if an ALJ's finding that an impairment is not medically determinable is not supported by substantial evidence. *John B. v. Kijakazi*, 20-CV-1310, 2022 WL 813829 at *5 (N.D.N.Y. March 16, 2022)

-13-

(collecting cases); *See Bruce Wayne C. v. Comm'r of Soc. Sec.*, 2022 WL 1304024, at *12 (N.D.N.Y. May 2, 2022) ("harmless error analysis does not ordinarily apply to an ALJ's failure to find a condition to be a medically-determinable impairment").

To be considered severe, the impairment, or combination of impairments, must cause more than minimal limitations in a plaintiff's ability to perform work-related functions. *Aguglia v. Comm'r of Soc. Sec.*, 19-CV-6110, 2020 WL 4462519, at *3 (W.D.N.Y. August 4, 2020). The standard for finding a severe impairment at step two of the sequential analysis is *de minimis*, and intended only to screen out the very weakest cases, but the mere presence of a diagnosis or treatment is, by itself, insufficient to establish a condition as severe. *Anna G. v. Comm'r of Soc. Sec.*, 2021 WL 3721140, at *2 (W.D.N.Y. Aug. 23, 2021).

Regardless of the determination at step two, an ALJ must account for limitations caused by both severe and non-severe impairments in the formulation of the plaintiff's RFC at step four. *Christian H. v. Comm'r of Soc. Sec.*, 20-CV-1490, 2022 WL 3648022, at *4 (W.D.N.Y. Aug. 24, 2022). As a result, an ALJ's failure to evaluate the extent to which mild limitations may or may not impact a plaintiff's ability to engage in substantial gainful employment constitutes legal error requiring remand. *Grace v. Comm'r of Soc. Sec.*, 20-CV-1023, 2022 WL 912946, at *3 (W.D.N.Y. 2022). However, an ALJ is only required "to *evaluate* non-severe impairments in the RFC analysis, not to include limitations in the RFC." *Catherine Jean D. v. Comm'r of Soc. Sec.*, 2022 WL 4115367, at *3 (W.D.N.Y. Sept. 9, 2022). "To hold otherwise would defy

-14-

logic: requiring an ALJ to limit a [plaintiff's] ability to work due to a non-severe impairment suggests that the non-severe impairment causes significant work limitations, which runs counter to the non-severity finding." *Id.* Moreover, even if an ALJ errs in assessing severity at step two, the error is harmless if the ALJ finds other severe impairments and considers the effects of all of plaintiff's impairments through the remainder of the sequential analysis. *Herman S. v. Comm'r of Soc. Sec.*, 577 F. Supp.3d 190, 197-198 (W.D.N.Y. 2022).

*Back Pain*

Although plaintiff is correct that the ALJ did not identify his back pain as a medically determinable impairment and did not, therefore, categorize plaintiff's back pain as severe or non-severe, the ALJ did, in fact, address plaintiff's low back pain when considering limitations in plaintiff's ability to perform basic work-related activities. Dkt. #4, pp.27 & 30-31.

The ALJ referenced the consultative medical examination by Nikita Dave, M.D., on August 2, 2019. Dkt. #4, p.30. Upon examination, plaintiff demonstrated a normal gait and stance and could walk on heels and toes without difficulty. Dkt. #4, p.707. He was able to squat 3/4 down. Dkt. #4, p.707. He was able to rise from a chair without difficulty and needed no assistance getting on and off the examination table. Dkt. #4, p.707. He demonstrated full flexion, extension, lateral flexion and rotary movement of the cervical spine bilaterally as well as full flexion, extension and rotary movement of the lumbar spine bilaterally, with lateral lumbar flexion of 15-20 degrees

bilaterally. Dkt. #4, p.708. Mild tenderness was observed midline at L5-S1 and bilaterally at the paramedian areas at L5-S1. Dkt. #4, p.708. Straight leg raise was negative bilaterally. Dkt. #4, p.708. Plaintiff demonstrated full range of motion of shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally. Dkt. #4, p.708. Dr. Nikita diagnosed plaintiff with low back pain on and off with severe flare ups intermittently and opined that plaintiff may have moderate limitations for repetitive activities of heavy lifting and bending. Dkt. #4, p.708. The ALJ determined that such limitations were "not well supported" because they were based upon subjective complaints of pain without evidence of significant treatment history or medical imaging demonstrating degenerative disc disease. Dkt. #4, p.31.

State agency consultant J. Lawrence, M.D., determined that plaintiff's alleged functional limitations were not consistent with the objective evidence of record. Dkr. #4, p.95. Based upon the consultative examination, Dr. Lawrence opined that plaintiff would be capable of lifting 25 pounds frequently and 50 pounds occasionally with no postural or manipulative limitations and could stand or walk and sit for a total of 6 hours in an 8-hour workday. Dkt. #4, p.95. The ALJ found this opinion unpersuasive because it relied upon the unpersuasive consultative examination. Dkt. #4, p.31.

The ALJ also addressed the Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination form completed by Megan Mogavero, NP at Evergreen Health Services on April 29, 2020. Dkt. #4, p.31. NP Mogavero noted plaintiff's low back pain, which was treated with

-16-

Gabapentin and Motrin, and opined that plaintiff would be moderately limited in his ability to lift, carry, push, pull and bend. Dkt. #5, pp.445-446. The ALJ determined that this opinion was not persuasive in light of the plaintiff's routine medical care and treatment as well as the plaintiff's admission of yard work and exercising multiple times per week. Dkt. #4, p.31.

As the ALJ noted, treatment records from Evergreen Health Services during the relevant time period for plaintiff's SSI claim note that plaintiff denied joint pain, muscle pain and other musculoskeletal symptoms (Dkt. #4, p.755; Dkt. #5, pp.453, 468); walked with a normal gait and station (Dkt. #4, p.756); did not demonstrate tenderness of the spine (Dkt. #4, p.756); and endorsed regular exercise, normally going to the gym multiple days per week as a means of stress relief. Dkt. #5, pp.454, 594 & 599.

In addition, plaintiff's counsel conceded that there were no diagnostic studies that would account for plaintiff's complaints of chronic back pain. Dkt. #4, p.46. In fact, the only imaging in the evidence of record was an x-ray of plaintiff's lumbrosacral spine demonstrating relatively well maintained height of the intervertebral disc spaces and vertebral bodies, with no acute fracture or subluxation. Dkt. #4, p.710.

In light of the above discussion, the ALJ's determination that limitations stemming from plaintiff's subjective complaints of pain were "not well supported" (Dkt. #4, p.31), is supported by substantial evidence. Moreover, given the ALJ's

-17-

consideration of plaintiff's low back pain when assessing plaintiff's RFC, any error in

failing to identify plaintiff's low back pain as a medically determinable impairment is

harmless. *See Elizabeth H.,* 2025 WL 1746568, at *7 (In light of the fact that the ALJ

clearly considered plaintiff's alleged impairment in formulating the RFC, any error in not

specifically identifying it as a medically determinable impairment was harmless); *Bruce*

*Wayne C.*, 2022 WL 1304024, at *13 (although the ALJ did not consider whether

plaintiff's abscesses were a medically determinable impairment, remand was not

warranted because the ALJ considered them when assessing plaintiff's RFC and

plaintiff failed to meet his burden of proving that they caused any functional limitation);

*Cf. Isacc R.,* 2022 WL 306364, at *7 (remanding where ALJ's conclusion that plaintiff's

back pain was not medically determinable was not supported by substantial evidence

and there was no indication that the ALJ considered plaintiff's back pain beyond step

two of the sequential analysis).

*Mental Impairment*

Plaintiff underwent a consultative psychiatric evaluation by Susan

Santarpia, Ph.D., on August 2, 2019. Dkt. #4, p.700. Plaintiff reported that his current

medication and counseling had "helped control/stabilize his dysphoric mood, crying

spells, hopelessness, loss of usual interest, diminished sense of pleasure, and social

withdrawal." Dkt. #4, pp.700-701. He reported chronic worry, restlessness to the point

of panic, inflated self esteem, grandiosity, flight of ideas, increased goal directed activity

and excessive involvement in pleasurable activities. Dkt. #4, p.701. Plaintiff was

observed to be cooperative, with adequate manner of relating, social skills and overall

presentation. Dkt. #4, p.701. His thought processes were coherent and goal directed, his affect was of full range, and his mood was anxious. Dkt. #4, p.701. Plaintiff was oriented to person, place and time with intact attention and concentration. Dkt. #4, p.702. He was able to recall 3/3 objects immediately and 2/3 objects after a delay. Dkt. #4, p.702. He could recite 6 digits forward and 3 in reverse order. Dkt. #4, p.702. His insight and judgment was observed to be fair. Dkt. #4, p.702. Dr. Santarpia determined that plaintiff would be

> able to understand, remember, and apply simple as well as complex directions and instructions, interact adequately with supervisors, coworkers and the public, sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, maintain personal hygiene and appropriate attire, be aware of normal hazards and take appropriate precautions within normal limits.

Dkt. #4, p.702. Dr. Santarpia opined that plaintiff would have a mild impairment regulating emotions, controlling behavior, and maintaining well being. Dkt. #4, p.703. Dr. Santarpia recommended that plaintiff continue with psychological/psychiatric and drug and alcohol treatment as currently provided and that he consider vocational training and rehabilitation. Dkt. #4, p.703.

State Agency Consultant J. May, Ph.D., determined that plaintiff's report of anxiety during his consultation with Dr. Santarpia was not supported by the rest of the medical record and noted that although Dr. Santarpia observed that plaintiff's mood was anxious, his mental status examination was otherwise within normal limits. Dkt. #4, p.94. Based on the totality of the evidence of record, Dr. May opined that plaintiff's medically determinable mental impairment was non-severe. Dkt. #4, p.94.

NP Mogavero completed a Medical Source Statement Regarding Mental Health dated September 3, 2020, indicating that plaintiff had been seen at Evergreen Health Services since 2017. Dkt. #4, p.807. She noted that plaintiff was linked with addiction medicine, was linked in the past with mental health, and was stable with medications. Dkt. #4, p.807. She indicated that plaintiff suffered from decreased energy, mood disturbance and bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndrome. Dkt. #4, p.808. NP Mogavero did not find plaintiff seriously limited in any mental aptitude needed to do skilled work or in his ability to interact appropriately with the general public or maintain appropriate behavior. Dkt. #4, p.810. She opined that plaintiff was capable of engaging in full-time competitive employment on a sustained basis but would be absent from work due to his impairment or treatment about two days per month. Dkt. #4, pp.811-812.

The ALJ found the opinions of Dr. Santarpia and NP Mogavero persuasive, remarking that they "are generally consistent with one another in that the [plaintiff] has some, but only mild limitations, and could engage in competitive employment." Dkt. #4, p.31. However, the ALJ determined that the portion of NP Mogavero's assessment that plaintiff would likely miss about two days of work per month was

> not adequately explained and . . . not consistent with the balance of the report, showing that the [plaintiff] can adequately deal with stress, complete a normal work day or work week and work at a consistent pace. It is also inconsistent with the [plaintiff's] ability to maintain

> attendance and persist through his schoolwork for the past two years with little interruption. Thus, that portion of the opinion is not persuasive.

Dkt. #4, p.31. The ALJ also found persuasive the opinions of the state agency consultants that plaintiff's mental health impairments are non-severe, explaining that such "opinions are consistent with the finding that, when not using substances, the [plaintiff] does not have significant limitations and are consistent with his schooling and his daily activities." Dkt. #4, p.31. In the absence of substance abuse, the ALJ assessed plaintiff's mental limitations in each of the four functional areas to be mild. Dkt. #4, pp.31-32. For example, the ALJ noted that plaintiff was able to comply with prescribed medication, regularly attend substance abuse treatment and other medical appointments, complete college courses, participate in clinical course work and engage in meaningful relationships. Dkt. #4, pp.31-32.

The ALJ's assessment that plaintiff's mental impairment was not severe and would have no more than mild limitations in each of the four areas of mental functioning is supported by substantial evidence as evidenced by the opinions of Dr. Santarpia and NP Mogavero, as well as the underlying medical record and plaintiff's activities of daily living. Medical records from Evergreen Health Services note normal mental status examinations and indicate that plaintiff's bipolar disorder was in full remission more than a year before his April 18, 2019 SSI application. Dkt. #4, pp.619 & 621. Medical records subsequent to that date note plaintiff's denial of anxiety, depression or sleep pattern disturbance and indicate normal mental status examinations. Dkt. #4, pp.750-751, 754-756. Plaintiff reported that he felt stable and

was doing well with both his mental health and substance abuse treatment. Dkt. #4, p.754 & Dkt. #5, p.387. He successfully navigated college classes and clinical course work and was scheduled to take a clinical simulation to complete his requirements for a respiratory therapy program. Dkt. #4, p.51.

Where, as here, the ALJ recognized plaintiff's medically determinable mental impairment of depression and bipolar disorder and provided an explanation as to why such impairment did not cause more than mild limitations in any of the four areas of mental functioning and would not impact plaintiff's capacity to work, the ALJ has met his obligation at step four. *See Grace*, 2022 WL 912946, at *3-4 (no error where ALJ recognized medically determinable impairments at step two and properly determined that they did not cause more than minimal limitations in plaintiff's ability to perform basic mental work activities at step four); *Cromwell v. Comm'r of Soc. Sec.*, 18-CV-1194, 2020 WL 409989, at *2 (W.D.N.Y. Jan. 24, 2020) (no error where ALJ found plaintiff's mental impairments non-severe at step two and cited evidence in his RFC analysis at step four supporting his conclusion that functional limitations were unwarranted); *Goettel v. Comm'r of Soc. Sec.*, 18-CV-1285, 2019 WL 6037169, at *6 (W.D.N.Y. Nov. 14, 2019) (plaintiff's argument that the ALJ failed to consider non-severe impairments at step four undermined by ALJ's explicit consideration of evidence pertaining to plaintiff's mental impairments when assessing plaintiff's RFC).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #9), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #11), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
               **March 30, 2026**

                            _s/ H. Kenneth Schroeder, Jr._
                            **H. KENNETH SCHROEDER, JR.**
                            **United States Magistrate Judge**

-23-